UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHN MANUEL SIMAS,**<br>      Defendant/Appellant,<br>vs.<br>**CRAIG POWELL AND KELLY POWELL,**<br>      Plaintiffs/Appellees. | CASE NO. 21-cv-126-YGR<br><br>**OPINION GRANTING IN PART AND DENYING IN PART BANKRUPTCY APPEAL**<br><br>Re: Dkt. No. 13 |

This action arises out of a bankruptcy order granting appellees' Craig Powell and Kelly Powell ("the Powells") adversary proceeding regarding the status of a claim against Mr. Powell's cousin, appellant John Manuel Simas. The bankruptcy court found that appellees established by a preponderance of the evidence that their claim against appellant should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) ("Section 523(a)(6)"). Mr. Simas filed this appeal, arguing that the bankruptcy court erred in several aspects.

Having carefully considered the parties' briefing and the excerpt of the record filed in this case, and for the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** appellant's bankruptcy appeal and **AFFIRMS** the bankruptcy court's order **IN PART**.[1]

While the Court has carefully reviewed the administrative record in its entirety, it does not attempt to summarize the 1800+ page record in this Opinion. Nor is a full factual summary necessary for the Court to address the appeal. Instead, specific facts relevant to the disposition of the case are included in the discussion below.

---

[1] The Court's scheduling order sets forth the briefing schedule for this appeal. (*See* Dkt. No. 2.) Appellant filed a motion to strike appellees' reply brief. (*See* Dkt. No. 18.) Appellees argue that their reply brief should not be stricken because they simply followed the Court's scheduling order. (*See* Dkt. No. 19.) Because the Court's scheduling order did in fact set a date for appellees' reply brief, the filing was allowable and appellant's motion to strike is **DENIED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

The claim giving rise to the instant adversary proceeding arises from a transaction related to 153 St. Albans ("the Property").

By way of factual background, the Paradise Park Masonic Club, Inc. ("PPMC"), a California nonprofit mutual benefit corporation owns 138 acres of land located in Santa Cruz County and sells "allotments." (Excerpt of Record ("ER"), Dkt. No. 14-2, at 123.) In 2003, appellant's father, Ed Simas, purchased an allotment for appellant's use and occupancy in the Property. (*Id.* at 124.) Appellants' parents, Ed and Sharon, each also own allotments. Mr. Simas became a member of PPMC on January 18, 2003. (*Id*. at 124.) He lived in the Property until he decided to move to Brazil in early 2014. (*Id.*) His intentions were to stay in Brazil permanently. (*Id.*)

While living in Brazil, Mr. Simas and the Powells entered into an agreement whereby appellees would use the Property in exchange for paying the insurance, utilities, and related expenses associated with the Property. (*Id.*) After approximately two years of using and maintaining the Property, Mr. Simas and the Powells began discussions relating to the sale of the Property. (ER-4-400-414.) Appellees were interested in buying the Property as a vacation home and Mr. Simas was interested in selling it. (*Id.*) Appellant's mother Sharon assisted with the transaction as Mr. Simas' internet service in Brazil could be unreliable.

On February 1, 2017, appellees entered into a written agreement with appellant to purchase the Property. (ER-2-124). The parties agreed that appellees would purchase the Property for $200,000, with a down payment or earnest money totaling $110,000. (ER-3-263). Appellees made timely payments to appellant for the purchase of the Property. (ER-2-124.)

In April 2018, Mr. Simas returned from Brazil after having been robbed and beaten during a home invasion. (*See id.*) Upon his return, he initially stayed with his mother. (*Id.*) Issues started to arise between appellant and his mother, as did a "downward spiral of mental health and alcohol issues for Mr. Simas." (*Id.*)

In mid-May, Mr. Simas, the Powells and an uncle, Jim Silveria, negotiated a modification to the contract. Mr. Silveria had been providing financial support to Mr. Simas during his time in

Brazil. The bankruptcy court summarized the key terms:

- In exchange for money already received (in the amount of $127,000) and a promissory note for $103,000, Craig received the house at 153 St. Albans, Santa Cruz (and associated membership rights at PPMC). The promissory note would be executed by Craig to Silveria.

- In satisfaction of the remaining $103,000 due for the Property, John received (1) forgiveness of $18,000 owed by John to Silveria pursuant to a note, (2) $21,250 paid on May 17, 2018 from Silveria, and (3) on-going support of $1770.83 per month for 36 months. [Exh 36]

This modification changed the obligation to provide payment for the Property from the Powells to Silveria. In turn, Silveria would continue to provide on-going support to John monthly for a three-year period. When negotiated, John intended to return to Brazil or Portugal where he could use his Portugese, or travel to the Holy Land. He did not intend to remain in Santa Cruz.

Order at 4:12-22.

Sometime in May, given the strain between Mr. Simas and his mother, he left his mother's home, and with appellees' permission, he moved back into the Property. (*Id.*) He stayed there for a few weeks before leaving the Property on May 24. (*See* ER-4-468).

Over Father's Day weekend 2018, appellant experienced mental health issues and needed a place to stay. (*See* ER-7-1253-56; ER-9-1673-74.) After some back and forth, appellees agreed to allow appellant to stay at the Property while they were not there, but they explicitly required that he vacate the Property whenever they asked him to. (ER-7-1253-56.) Appellant accepted the conditions and moved in. (*Id.*)

Around the fourth of July, the Powells asked Mr. Simas to leave the Property so they could use it for the holiday. (*See id.*) Mr. Simas responded that leaving the house would not work for him and refused to leave. (*Id.*) He then stopped answering the Powells' calls and changed the locks to the Property shortly after, claiming paranoia that someone would break into the Property. (ER-9-1711; ER-7-1255-56.) On October 9, 2018, Mr. Simas was placed on a Welfare and Institution Code Section 5150 hold. When he was released on October 24, 2018, he returned to and remains on the Property, at least as of November 2020. (ER-2-125-27.)

On January 2, 2019, the Powells filed a lawsuit against Mr. Simas in Santa Cruz Superior

Court alleging breach of contract, quantum meruit, trespass, and conversion. (ER-2-24-41.)

## II. BANKRUPTCY PROCEEDINGS

In response to the state court action, Mr. Simas filed a chapter 7 bankruptcy in the Northern District of California on January 28, 2019. (ER-3-307-350). The filing of appellant's bankruptcy resulted in an automatic stay of the Powells' state court action. (*Id.*) On April 23, 2019, the Powells filed an adversary complaint to determine the dischargeability of their claim against Mr. Simas. (ER-3-246-269.) In their adversary proceeding, the Powells sought three claims for relief, one being the "willful and malicious" injury pursuant to Section 523(a)(6) which is the subject of this appeal. Mr. Simas brought a counterclaim against the Powells for damage to the Property and waste.

The bankruptcy court held a three-day trial in the adversary proceeding in November 2020. By written decision dated December 11, 2020, the bankruptcy court found that the Powells' claim survived Mr. Simas' discharge pursuant to Section 523(a)(6). Appellant filed a timely appeal.

## III.   LEGAL FRAMEWORK

Pursuant to 28 U.S.C. § 158(a), district courts have jurisdiction to hear both interlocutory and final appeals from bankruptcy court orders and judgments. *See* 28 U.S.C. § 158(a). When reviewing a bankruptcy court's decision, the district court functions as an appellate court would, and applies the same standards of review as a federal court of appeals. *In re Crystal Props., Ltd.*, 268 F.3d 743, 755 (9th Cir. 2001). Thus, a bankruptcy court's findings of fact, including a party's mental state, is reviewed for clear error while the court's conclusions of law are reviewed under a *de novo* standard. *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 783 (9th Cir. 2007).

Debtors who file for bankruptcy under Chapter 7 are normally entitled to discharge unsecured debts. However, certain types of debt may not be discharged, including any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). An intentional tort may provide the basis for a Section 523(a)(6) claim provided that the elements of willful and malicious injury are also met. *In re Jercich*, 238 F.3d 1202, 1205-06 (9th Cir. 2001). "[T]he willful injury requirement of § 523(a)(6) is met when it is

4

shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct." *Id.* at 1208 (emphasis in original). "A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Id*.at 1209 (quoting *In re Bammer*, 131 F.3d 788, 791 (9th Cir. 1997) (en banc)).

Appellant identified five issues upon which he believes the bankruptcy court erred, namely that: (a) Mr. Simas' conduct was willful and malicious under § 523(a)(6); (b) Mr. Simas' conduct was a trespass to real property under California law; (c) Mr. Simas' conduct was a conversion of personal property under California law; (d) that the Powells could seek both specific performance and monetary damages in their state court action; and (e) Mr. Simas' counterclaim for damages should be denied. (Opening Brief, Dkt. 13, pp.5-6.)  The Court addresses each in turn.

**IV. ANALYSIS**

### a. Issue of whether Mr. Simas' conduct was a trespass to real property under California law[2]

Mr. Simas challenges the bankruptcy court's finding that he trespassed on the Property. Under California law, the elements of trespass are: (1) plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) entry onto the property in excess of permission granted; (4) harm; and (5) defendant's act was a substantial factor in causing harm to plaintiff. *Ralphs Grocery Co. v. Victory Consultants, Inc*., 17 Cal. App. 5th 245, 262 (2017).

The fundamental issue raised in this appeal relates to the first element.  Who owned or controlled the Property: the Powells or Mr. Simas?  Appellant argues that he could not have engaged in trespass because the contract upon which the Powells assert ownership "was defective and unenforceable" and therefore did not "convey a legally cognizable possessory interest to the Powells." More specifically, Mr. Simas claims the Powells were not entitled to purchase the Property because, at the time of execution of the contract, they had not satisfied certain of PPMC's

---

[2] Although Mr. Simas identifies as the first issue the findings of malicious and willful conduct, the Court begins with the second issues for trespass and the third issue for conversion as the bankruptcy court's findings on those topics impact the malicious and willfulness ruling.

rules and bylaws which were required before title could be transferred to another party.

Under California law, in a trespass action for real property, the proper plaintiff is the person in possession of the property. *Veiseh v. Stapp*, 35 Cal. App. 5th 1099, 1104 (2019) (citations omitted.) The type of possession interest necessary to maintain an action for trespass to property is "peaceable possession" which can be established by proving actual possession—that is, subjecting the land to one's will and control. *Id.* at 1106. Importantly, "[n]o averment of title is necessary." *Id.* at 1104. *"*Even 'one in peaceable though wrongful possession of real property may sue in tort for forcible interference with that possession even in the absence of injury to his person or goods.'" S*pinks v. Equity Residential Briarwood Apartments,* 171 Cal. App. 4th 1004, 1042 (2009). A defendant cannot assert a defense of consent where the defendant has exceeded the scope of consent. *Mangini v. Aerojet-General Corp*., 230 Cal. App. 3d 1125, 1141-42 (1991).

Here, the evidence showed that Mr. Simas and the Powells entered into a contract whereby the parties agreed that the "buyer(s) w[ould] maintain possession of the [P]roperty upon execution of t[he] contract." (ER-3-263-69.) The Powells executed the contract on January 21, 2017 and Mr. Simas executed the contract on February 1, 2017. (*Id*.) Thereafter they executed a modification. In furtherance of this agreement, Mr. Simas received 6 payments from the Powells, either directly or indirectly, in an amount totaling $ 127,000 for a period beginning October 2, 2016 through January 31, 2018. (ER-4-459; Order at 4.) During that time, Mr. Simas spent virtually no time in the United States, much less at the Property. In fact, upon his return from Brazil, he resided with his mother. Only in May of 2019 did he request permission to use the Property when it was not being used by the Powells.

Further, the record shows that Mr. Simas understood that appellees had control and possession of the Property. Mr. Simas asked appellees for permission to stay on the Property temporarily, promised to leave whenever appellees asked him to leave, and referred to the Property as appellees' home. (*See* ER-2-124-125; ER-4-468.) Appellant admits that he agreed to sell the Property in exchange for payment, that he received money from appellees for the purchase of the Property, and that the payments appellees made to him from 2016 to 2018 were for the purchase thereof. (ER-2-124.) Further, shortly after in May 2018, Mr. Simas told the Powells he

6

would leave the Property and move back in with his mother. (*Id.* at 124-125; ER-4-468.)

Notwithstanding the above, Mr. Simas maintains his position that the bankruptcy court ignored law indicating the Powells were, in fact, not in possession and could not have legal title as a matter of California law. *Id.* Appellant's focus on the issue of title does not compel a different result because the issue is not dispositive of the issue of trespass. *See Veiseh,* 35 Cal. App. 5th at 1104 (finding that standing to pursue trespass action is not defeated by the fact that the person has no legal rights to the property). Mr. Simas recognizes as much in his reply brief. (*See* p. 10) (conceding that a person in possession, even a tenant, can assert the claim).

The California code sections on which Mr. Simas relies only discuss issues of title; not all possessory interests and therefore are not dispositive. Similarly, Mr. Simas' reliance on *Martin v. Bridgeport Comm. Ass'n, Inc.*, 173 Cal. App. 4th 1024, 1037-38 (2009) to argue that the Powells had no standing to enforce any possessory right to the Property does not persuade. *Martin* was not a trespass case, nor did it deal with possessory interest. *Martin* dealt with non-signatories' inability to enforce certain contractual provisions included in the Covenants, Conditions, and Restrictions and Rules and Regulations for the property, documents to which plaintiffs were not signatories.

Next, Mr. Simas avers that the bankruptcy court erred in relying on *Veiseh,* 35 Cal. App. 5th at 1099, a trespass case dealing with possessory interest. Appellant attempts to distinguish *Veiseh* from the facts of his case, but the basic facts are analogous. In *Veiseh*, the court held that plaintiff, who was in physical possession of the property but did not hold title, had standing to bring a claim for trespass. The court went on to explain that plaintiff's failure to comply with a requirement of the California Unform Transfers to Minors Act did not affect his possessory interest. The court's analysis did not turn on whether plaintiff previously had a legally enforceable claim of ownership. Thus, the Court finds that Mr. Simas' analysis does not persuade.

The Court notes that whether the Powells could have actually obtained title is unresolved. The contract provides that appellees would be provided with the paperwork needed in order to complete the membership application to start the process for switching over the title once appellees completed their masonic degree requirements. (*See* ER-3-264-65.) While appellant's

7

recitation of the bylaws and the fact that they prohibit the sale or assignment of an allotment are accurate, the Court finds that such prohibitions are not determinative of who had possessory interest in the property. Whether appellees were ultimately able to become members and transfer title in their names do not negate that the Powells had control and legal possession of the Property beginning in at least February 2017 through the time of the incident. *See Veiseh*, 35 Cal. App. 5th at 1106-07.

While Mr. Simas has identified a potential issue which may have resulted in the Powells not obtaining title of the Property, the conclusion is not self-executing, nor is it automatic. The Powells presented evidence that the Association had knowledge of the arrangement and made no indication that it objected or that it would deny membership. Accordingly, the Court cannot find on this record, that as a matter of law, the contract is null and void.[3]

In conclusion, in terms of sufficiency of the evidence, the bankruptcy court did not err when it found that all elements of trespass were satisfied. The bankruptcy court found that the Powells had control of the Property by way of the parties' contract, that appellant's stay at the Property exceeded his granted permission, and that Mr. Simas' actions caused the Powells' harm. Accordingly, the Court finds that the bankruptcy court did not err in finding that appellees had a possessory interest in the Property and could maintain a suit for trespass.[4]

### b. Willful and Malicious Conduct

Because an intentional tort can be the basis for a Section 523(a)(6) claim, the first step of the bankruptcy court's analysis focused on whether appellant's conduct constituted a tort. The court found that appellant's continued use of the Property after appellees asked him to leave constituted trespass and conversion and was thus a sufficient basis for nondischargeability under Section 523(a)(6). With respect to the tort of conversion, the bankruptcy court found that

---

[3] The Court agrees that this action does not fall within the purview of those contracts which must be struck for public policy reasons nor has appellant so advocated.

[4] Appellant briefly argues that not all trespasses can be the basis for 523(a)(6) claims because the intent requirement for trespass can be satisfied by reckless or negligent conduct. While that may be true, that argument is unpersuasive in this context. More than sufficient evidence exists for the bankruptcy court's finding that appellant's entry into the home was intentional and in excess of the permission granted. (*See* Order at 7.)

8

appellant's actions constituting trespass also satisfied the elements for conversion of appellees' personal property because appellees no longer had access to their personal belongings that were located on the Property.

Having found that appellant's conduct was tortious, the court next analyzed whether appellant's conduct was both "willful and malicious." Mr. Simas argues that the bankruptcy court erred in finding appellant's conduct "willful and malicious." In doing so, appellant argues that his mental condition at the time in question precluded him from being able to understand the consequences of his actions. In the Ninth Circuit, willfulness and malice are analyzed separately and are not to be conflated. *See Carrillo v. Su (In re Su),* 290 F.3d 1140, 1146 (9th Cir. 2002). Willful injury requires an inquiry into the subjective state of mind of the debtor. *In re Su,* 290 F.3d at 1145.

### i. Willfulness

The willfulness requirement is met when the debtor knows that the injury is substantially certain to occur as a result of his conduct. *See Jercich*, 238 F.3d at 1208. The court may infer intent "from the totality of the circumstances and the conduct of the person accused." *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010). "The [d]ebtor is charged with the knowledge of the natural consequences of his actions," *id.*, and the court is not required to "take the debtor's word for his state of mind," *Carillo,* 290 F.3d at 1146, n. 6. In addition, the "court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *Id.* Trial judges, not appellate judges, are the arbiters of credibility and believability. The parties agree that the Court views the bankruptcy court's finding of willfulness and the finding of appellant's mental state for abuse of discretion. *Sigma Micro Corp.*, 504 F.3d at 783.

After a three-day trial, the bankruptcy court found that the evidence introduced at trial showed that appellant "understood injury was substantially certain to occur" and that no evidence was introduced that appellant lacked the mental capacity to understand the consequences of his actions. (Order at 9; 10 n.3.) While the bankruptcy court found that there was no evidence that appellant had a subjective motive to inflict injury on appellees, it found that, notwithstanding

appellant's mental health issues, appellant understood that injury to appellees was substantially certain to occur given that appellees would have been prohibited from using the Property. These consequences include that the Powell's could not access their Property, including their personal belongings, without interference and the Powell's loss of use and enjoyment of the Property.

Having reviewed the record, the evidence supports the finding of appellant's willful intent, namely the subsequent changing of the locks on the Property, appellant's communication with appellees indicating that he would not leave the Property, and appellant's decision not to participate in further communications with appellees. These actions support the bankruptcy court's finding and are sufficient to show that Mr. Simas knew the natural consequences of his actions and that they would cause harm to appellees. Thus, the Court finds that the bankruptcy court did not err in finding that appellant's conduct was willful under Section 523(a)(6).

Moreover, the Court finds that the bankruptcy Court appropriately applied a subjective standard and did not err in finding that appellant understood that injury was substantially certain to occur, notwithstanding his mental health issues at the time. While there is evidence in the record explaining that appellant might have been experiencing some mental health issues around the time of the conduct, the evidence does not establish, if and how, appellant's mental health issues affected his ability to make decisions and understand the effects of his consequences. For instance, there are no medical records, expert opinions, or doctor reports establishing how appellant's health issues impacted his cognitive abilities at the time of the incident. Nothing in the record suggests that the bankruptcy court erred in finding that appellant did not lack the mental capacity to understand the consequences of his action.

   *ii. Maliciousness*

Appellant argues that the bankruptcy court erred in holding that his conduct was malicious because his mental state provided an excuse for his action. "A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *In re Jercich*, 238 F.3d at 1209. The creditor has the burden of proof with respect to the first three elements. *See In re Hagele*, No. 15-1033, 2016 WL 3965899, at *6 (9th Cir. BAP 2016). The Court agrees that the "fourth element, 'without just cause or excuse,' is less

straightforward since by its nature the lack of good cause or excuse is not proved by the plaintiff with affirmative evidence . . . ." *Id.* (explaining that debtor carries burden to prove excuse or just cause because they are affirmative defenses). That said, ultimate burden remains with the creditor but the Court can consider all evidence. *See Jett v. Sicroff*, 401 F.3d 1101, 1106 (9th Cir. 2005).

As mentioned above, *see supra* at b.i., appellees have made a sufficient showing of the first three elements. Sufficient evidence supports the court's finding that while appellant might have been suffering from some type of mental illness, appellant did not show that those issues impacted his cognitive abilities, including his ability to understand the natural consequences of his actions.

On its face, given the evidence, there appears to be no justification for the actions *unless* the mental health defense was credited. Only appellant, who brought this appeal, had access to information supporting this view. A review of appellant's trial testimony informs the Court that appellant had access to his medical records, which totaled approximately 300 pages (ER-9-1677). It is not clear to this Court whether any of those records were admitted into evidence during the trial of the adversary proceeding, nor were they provided on appeal. Moreover, appellant did not present any medical testimony explaining what his condition was and how it impacted his cognitive abilities around the time of the incident. Absent such information, the Court affirms the bankruptcy court finding that appellant acted without "just cause or excuse" as insufficient evidence supporting a contrary finding was not presented.[5]

The Court finds that the bankruptcy court did not err in finding appellant's use of the

---

[5] Appellant relies on *In re Zhou*, 331 B.R. 274 (Bankr. E.D. Mich. 2005) to argue that one's mental illness can weigh against a finding of maliciousness. Such reliance is misplaced. *In re Zhou* dealt with a plaintiff who filed a fake police report against one of her coworkers which led to criminal charges being brought against him. *Id.* at 275. Plaintiff was ordered to pay $139,000 after the trial court entered a default judgment against her. *Id.* She subsequently filed a chapter 7 bankruptcy. *Id.* Shortly after, her coworker objected to the discharge of the debt under Section 523(a)(6). *Id.* The bankruptcy court found the evidence regarding plaintiff's paranoid schizophrenia persuasive, including her doctor's testimony that her condition caused her "not [to be] in touch with reality" and caused her "not to understand the ramifications of her actions." *Id.* at 277. Indeed, *In re Zhou* highlights the importance of evidence establishing how one's mental illness impacts their ability to make decisions and to understand the ramifications of their actions. The Court finds that such evidence is lacking from the record in this case.

Property, which exceeded his permission, a willful injury for purposes of Section 523(a)(6).

## V.     Limitation of Tort Damages.

Mr. Simas argues that the bankruptcy court erred in allowing the Powells to seek specific performance as a remedy in their state court action. Specifically, Mr. Simas argues that the contract was "rejected" as an executory contract under the Bankruptcy code, rendering specific performance unavailable to the Powells as a remedy.

Under 11 U.S.C. § 365(d)(1), if the trustee does not assume or reject an executory contract for residential real property of the debtor within 60 days after the order for relief then such contract or lease is deemed rejected. The rejection of an executory contract by a bankruptcy debtor in this fashion constitutes a breach of such contract immediately before the date of the filing of the bankruptcy petition. 11 U.S.C. § 365(g). Once rejected, the claim is treated as a pre-petition claim, which is typically limited to monetary damages. *See id*; *In re Aslan*, 65 B.R. 826, 831-32 (Bankr. C.D. Cal. 1986), *aff'd*, 909 F.2d 367 (9th Cir. 1990) (finding that rejection of an executory contract, where state law allows a remedy of specific performance, relieves the debtor/trustee from the requirement to specifically perform the contract); *In re Nickels Midway Pier, LLC*, No. 06-2671, 255 Fed. Appx. 633, at * 3 (3rd Cir. 2007) (finding that specific performance was not available under a rejected executory contract for real property because monetary damages served as a viable alternative). The bankruptcy code allows a non-debtor to seek specific performance of a rejected executory contract in limited circumstances. *See* Section 365(i)(1) (allowing for purchaser in possession of real property to remain in possession of the property so long as the purchaser continues to make payments on the property); *see also* Section 365(n)(1) (allowing for licensor of a right to intellectual property to seek specific performance).

Rejection of a contract is not the same as termination: the parties may still assert contractual rights post-rejection order to determine compensation for the injured party for the breach arising out of the rejection and to determine claims asserted in the other direction. *See In re OneCast Media,* 439 F.3d 558, 563 (9th Cir.2006). Following rejection, the contract continues to define the scope of liability for the injured party and the availability and extent of defenses for the breaching party. *Id.*

12

Here, Mr. Simas avers that the contract was an executory contract that was rejected when the trustee did not assume the contract under the timeframe set forth in Section 365(d)(1). The Powells do not dispute this point. Indeed, during the adversary proceedings they admitted as much. (*See* ER- 3-189) ("Powells Briefing in Support of Motion for Relief from Stay") ("The contract at issue in this matter (the "Agreement") is for the sale of the real property located at 153 St. Alban, Santa Cruz, California 95060 (the "Subject Property"). The Trustee had sixty days after the entry of the order for relief to assume or reject any "executory contract" listed in the Debtor's Schedules. As the trustee did not assume or reject the Agreement within that period, the Agreement was "deemed rejected." 11 U.S.C. § 365(d)(1).") Thus, the Court finds that the parties' contract was an executory contract that had been deemed rejected by operation of law.

Having found such, the Court next considers whether one of two exceptions that permit specific performance apply:

First, the exception relating to licensors holding intellectual property rights does not apply here because this dispute arises out of the parties' agreement for real property, not intellectual property.

Second, with respect to the exception for purchasers in possession of real property, Mr. Simas argues that the exception does not apply because he had possession of the property for purposes of Section 365(i)(1), not the Powells. Mr. Simas argues that he listed the allotment as his home, claimed a homestead exemption, and scheduled the contract as executory, thus proving that he had possession of the property for Section 365(i) purposes. The Powells do not dispute this. Given that the Powells do not argue, let alone mention, whether the exception under Section 365(i)(1) applies to them, the Court finds that the Powells have waived any argument that they were in possession of the property for purposes of Section 365(i)(1).

In light of the foregoing, the Court finds that the bankruptcy court erred in holding that the Powells could seek equitable relief for breach of the rejected executory contract. The Powells are limited to seeking a remedy for monetary damages in their state court action.

### VI.  Bankruptcy's Ruling on Appellant's Counterclaim

Appellant argues that the bankruptcy court erred in finding that appellant was not entitled

to damages on his counterclaims for waste and damage to the Property when appellees remodeled the property without appellant's knowledge or consent. The Court disagrees. As previously explained, the Court finds that the parties entered into a binding contract for the sale and purchase of appellant's home. The contract did not prohibit remodeling or repairs to the Property. Thus, the Court finds that the bankruptcy court did not err in finding that appellant was not entitled to damages on his counterclaim.

### VII. CONCLUSION

Based upon the foregoing, the Court **AFFIRMS** the bankruptcy court's decision **IN PART**. Accordingly, appellant's appeal is **GRANTED IN PART AND DENIED IN PART**.

The Clerk of the Court shall issue a judgment consistent with this Opinion.

Dated: November 10, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**